KEVIN G. LITTLE, SBN. 149818
ATTORNEY AT LAW
2115 Kern Street, Suite 330
Fresno, California 93721
Telephone: 559/486-5730
Facsimile: 559/486-4759

Attorney for Plaintiff Christina Romar

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

\*\*\*

| | |
|---|---|
| CHRISTINA ROMAR, a minor suing through, her mother and legal representative, CORA ROMAR,<br><br>            Plaintiff,<br>v.<br><br>FRESNO COMMUNITY HOSPITAL AND MEDICAL CENTER; DR. THOMAS MANSFIELD,<br><br>            Defendants. | No. CIV-F-03-6668 REC SMS<br><br>PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE SUPPLEMENTAL COMPLAINT; SUPPORTING DECLARATION; [PROPOSED] SUPPLEMENTAL COMPLAINT<br><br>Date: April 10, 2006<br>Time: 1:30 p.m.<br>Courtroom: One, 8th Floor<br>The Honorable Robert E. Coyle |

TO THE HONORABLE COURT:

   Plaintiff Christina Romar, a minor suing through her mother and legal representative, Cora Romar, through her undersigned attorney, hereby notifies the parties and the Court of her intention to move and herein moves for leave to file a supplemental complaint in this action, on the date and time indicated above. The proposed supplemental complaint is lodged concurrently herewith. The plaintiff requests leave to file the proposed supplemental complaint on the basis of the arguments and evidentiary materials set forth herein, as well as any argument and evidence that may be adduced at the upcoming hearing.

---

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE
SUPPLEMENTAL COMPLAINT; [PROPOSED] SUPPLEMENTAL COMPLAINT

**Procedural and Factual Background**

Plaintiff filed this action on November 24, 2003, invoking the original jurisdiction of this Court pursuant to 28 U.S.C. §§ 1331, 1343 and 1367. The plaintiff alleged claims under EMTALA and state law medical malpractice in her original complaint. In accordance with this Court's May 14, 2004 Order Granting Defendant's Motion to Dismiss and Federal Rule of Civil Procedure 15(a), plaintiff filed a First Amended Complaint on May 28, 2004. Plaintiff's First Amended Complaint also alleged EMTALA and medical malpractice claims.

The essential facts upon which the plaintiff bases her claims may be summarized as follows: Between December 10 and 14, 2002, plaintiff went to Community Medical Center - Fresno on three occasions seeking emergency examination and treatment. Over the course of those three presentations, Christina presented with symptoms that included a high fever, sore throat, bilateral periorbital swelling that eventually spread from her eye to her forehead, discharge from her swollen eyes, lethargy, and, on her third and final visit, an unexplained weight gain of 1.5 kilograms. However, the urgency/priority of Christina's condition was not recorded for her first visit, the inventory of Christina's systems was not recorded for her first two visits, no blood work up, including blood cultures, was ever ordered or done, and no temperature monitoring was ever done. Christina was initially administered Amoxicillin, which, as per the order of defendant Dr. Mansfield, was discontinued upon her second visit, after which time she was administered Benadryl for an unknown allergic reaction that was questioned by the nurse practitioner who examined her during her second emergency visit. No rash or other objective signs of an allergic reaction were ever noted.

On December 17, 2002, Cora Roma took Christina to Pediatrics Plus in Clovis, which promptly transferred her to Children's Hospital of Central California in Madera. Upon her emergency admission at Children's Hospital, blood work and a CT scan showed that Christina had a virulent infection. Christina ended up spending six weeks at Children's Hospital, including an extended stay in pediatric intensive care, where she was diagnosed with severe infectious processes and multiple related complications. Christina had to undergo numerous surgical procedures to address the complications caused by her virulent infection. As a result

of her related bone infection, Christina has developed a "frog pelvis" on her right side and has a right leg that is shorter than her left.

In accordance with this Court's Order of September 28, 2004, it permitted plaintiff to proceed with her EMTALA claim to the extent that it alleged that plaintiff received a screening disparate from that provided to similarly situated patients, but dismissed said claim to the extent that it alleged that plaintiff was otherwise provided an inappropriate screening examination. As to plaintiff's contention that she received a cursory screening that did not comply with EMTALA, the Court found:

> A cursory screening claim requires an allegation that the screening was not designed to identify acute symptoms. Plaintiff's FAC, however, alleges that the screening that Christina actually received identified acute symptoms. The emergency room nurses weighed Christina, took her pulse, noted discharge from her eyes, and took her temperature. Thus, the FAC alleges that Christina was identified as having acute symptoms and was diagnosed and treated accordingly.

September 28, 2004 Order, p. 14, lines 13-21 (footnote omitted).

Since the Court issued its September 28, 2004 Order, this action has proceeded through discovery, including depositions of the parties and the witness designated by FCHMC pursuant to Federal Rule of Civil Procedure 30(b)(6) as the person most knowledgeable regarding its emergency policies and procedures. Additionally, pursuant to the Court's Order of October 25, 2005, which granted in part and denied in part plaintiff's motion to compel disclosure of confidential patient records, plaintiff obtained in November 2005 the records of 287 toddler patients deemed as potentially similar by the defendants. It appears that additional disputes pertaining to the production of those records remain to be litigated and resolved, but even those records show that, unlike plaintiff, the overwhelming majority of the 287 patients' records include a priority assessment, and inventory of systems, and a significant number also include entries indicating temperature and weight monitoring. Moreover, the records of 26 toddler patients, including those who, unlike plaintiff, were single visit, non-urgent patients, received screening examinations that included the utilization of ancillary services, such as various blood and urine laboratory analyses, radiology studies, and the administration of intravenous antibiotics.

On January 18, 2006, plaintiff complied with the operative scheduling order and designated Dr. Peggy Goldman, M.D., M.H.A., F.A.C.E.P., as a retained expert in the area of emergency medicine and infectious diseases. Dr. Goldman is board certified in internal medicine, emergency medicine, infectious diseases, and geriatric medicine. Plaintiff, through her counsel, had been consulting with Dr. Goldman for approximately one month prior to the date of her expert designation. Dr. Goldman played no role in reviewing the medical records and evaluating the medical facts pertinent to this action in connection with its filing, and plaintiff was not required to consult with Dr. Goldman sooner than she did. Neither plaintiff nor her counsel had any preexisting relationship with or knowledge of Dr. Goldman prior to consulting with her in December 2005.

In connection with her designation, and after reviewing extensive records and evidence, Dr. Goldman drafted a declaration summarizing her opinions. January 18, 2006 was the first time that the plaintiff was in possession of this evidence was when Dr. Goldman produced her declaration outlining her opinions.

In her declaration, paragraphs 2 through 9, Dr. Goldman opines as follows regarding the plaintiff's EMTALA claim. The portions of this declaration particularly germane to the additional EMTALA theory of relief set forth in the proposed supplemental complaint are underlined.

> I have reviewed the records of plaintiff's three emergency admissions to the Emergency Department of Fresno Community Hospital between December 10 and 14, 2002. I have also reviewed and considered the pertinent records of the plaintiff's subsequent admissions and treatment at Central California Children's Hospital, including her lengthy admission between December 2002 and January 2003. I have also reviewed additional miscellaneous records provided by plaintiff's counsel. I have also reviewed the depositions provided by plaintiff's counsel. The records I have reviewed have been sufficient to enable me to form opinions based on a reasonable degree of medical probability, as detailed herein.
>
> <u>Based upon my review and consideration of the case materials in this action, it is my opinion that the screening examination and emergency treatment plaintiff received at Fresno Community Hospital on December 10-14, 2002, and from defendant Dr. Mansfield on December 12, 2002 departed from the applicable standards of care and were inappropriate as that term is defined under the Emergency Medical Treatment and Active Labor Act. Specifically, the history obtained from the plaintiff during her</u>

---

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE
SUPPLEMENTAL COMPLAINT; [PROPOSED] SUPPLEMENTAL COMPLAINT                                   -4-

<u>emergency admissions raised a significant possibility that she was suffering from a virulent bacterial infection that would constitute a most serious emergency condition. This prospect should have been recognized by competent emergency medical practitioners based on the history obtained form plaintiff and her presentation upon being examined during her emergency admissions.</u>

<u>Under the circumstances presented by plaintiff during her emergency admissions, an acceptable and appropriate medical screening had to include, at minimum, a CBC, blood differential, blood and urine cultures, a CT scan, and a sedimentation rate, none of which was ordered or done as part of any of the plaintiff's emergency screening examinations. These necessary screening measures are clearly within the capability of any hospital having an emergency department and had to be ordered and done without delay.</u>

<u>It is important for this purpose to recognize that the mere performance of some sort of screening examination does not satisfy EMTALA. Indeed, such an interpretation would render the requirement that the exam be appropriate superfluous. Competent emergency practitioners must know that EMTALA requires the performance of a screening examination reasonably calculated to identify emergency conditions suggested by the patient's presentation in light of the resources at the emergency department's disposal.</u>

The plaintiff also did not receive stabilizing treatment in accordance with applicable standards of care and EMTALA. A patient with plaintiff's history and presentation required the administration of intravenous antibiotics at the earliest possible time, and the patient's admission to the hospital had to be fully considered by a reasonably prudent practitioner as well. The failure of the defendants to provide necessary and required stabilizing treatment resulted in plaintiff's being discharged in an unstable condition, i.e., her being discharged with a virulent, uncontrolled bacterial infection.

The failure to provide a screening examination and stabilizing treatment in accordance with the standard of care and EMTALA under these circumstances creates an unacceptable risk of failing to identify and treat a potentially virulent bacterial process in a timely manner. This failure had disastrous results in plaintiff's case.

Specifically, plaintiff had a reasonable medical probability of a better outcome, including the avoidance of a lengthy admission, subsequent surgical interventions and ongoing treatment at Central California Children's Hospital, had she received an acceptable and appropriate screening examination and stabilizing treatment for the virulent bacterial process with which she presented in December 2002. Plaintiff also lost the opportunity to achieve a better outcome with respect to her subsequent treatment as a result of the defendants' failures to provide a screening examination and stabilizing treatment in accordance with the standard of care and EMTALA.

Based on Dr. Goldman's report, it is obvious that plaintiff has a legitimate factual basis

---

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE
SUPPLEMENTAL COMPLAINT; [PROPOSED] SUPPLEMENTAL COMPLAINT                                          -5-

to allege that she did not receive an appropriate, but, rather, cursory, screening under EMTALA, in addition to the existing allegation that she received a disparate screening. It is for this reason that plaintiff now brings this motion for leave to file a supplemental complaint pursuant to Federal Rule of Civil Procedure 15(d).

### Applicable Standard of Review

Rule 15(d) of the Federal Rules of Civil Procedure provides that a "court may, upon reasonable notice and upon such terms as are just, permit [a party] to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." A trial court has discretion to determine whether leave should be granted to file a supplemental complaint. Hilliard v. Scully, 537 F. Supp. 1084, 1090 (S.D.N.Y. 1982), citing United States v. International Business Machines Corp., 66 F.R.D. 223, 227 n.1 (S.D.N.Y. 1975). Rule 15(d) is a tool of judicial economy and convenience, and its use is favored. See Cabrera v. City of Huntington Park, 159 F.3d 374, 381 (9th Cir. 1998); William Inglis & Sons Baking Co. v. ITT Continental Baking Co., Inc., 668 F.2d 1014, 1057 (9th Cir. 1982); Keith v. Volpe, 858 F.2d 467, 473 (9th Cir. 1988), cert. denied, 493 U.S. 813 (1989). A supplemental pleading is designed to cover matters that occur subsequent to the filing of the complaint, but pertain to the original pleadings. See Slavenburg Corp. v. Boston Ins. Co., 30 F.R.D. 123, 126 (S.D.N.Y. 1962) (citations omitted). Thus, under Rule 15(d), a party may supplement the original pleading to include subsequent occurrences which are related to the claim presented in the original complaint, absent prejudice to the nonmoving party. See Argus Inc. v. Eastman Kodak Co., 552 F.Supp. 589, 602 (S.D.N.Y. 1982). Information obtained during discovery may also justify the filing of a supplemental pleading. See Marathon Ashland Petroleum LLC v. Equili Co., L.P., 2002 WL 662900 *21 (S.D.N.Y. 2002). Moreover, a plaintiff may utilize a supplemental pleading to cure a defective original pleading by asserting newly obtained facts in support of an entirely different legal theory or remedy. Miller v. Cudahy Co., 567 F.Supp. 892, 896 (D.Kan. 1983). Because plaintiff's proposed supplemental pleading complies with Rule 15(d), it should be permitted to be filed.

---

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE
SUPPLEMENTAL COMPLAINT; [PROPOSED] SUPPLEMENTAL COMPLAINT                                                -6-

**Summary of EMTALA's Requirements**

<u>Overview of EMTALA</u>

In 1986 Congress enacted EMTALA, which makes hospitals liable for "refusing to provide emergency medical treatment or transferring patients before their conditions were stabilized." <u>Gatewood v. Washington Healthcare Corp.</u>, 933 F.2d 1037, 1039 (D.C.Cir. 1991). EMTALA is not a negligence statute. <u>See</u> <u>Summers v. Baptist Medical Center Arkadelphia</u>, 91 F.3d 1132, 1134-1136 (8th Cir. 1996); <u>but see</u> <u>Griffith v. Mt. Carmel Medical Center</u>, 831 F.Supp. 1532, 1543 (D.Kan. 1993) (EMTALA and medical malpractice are not mutually exclusive and the same evidence may be used to establish both claims). To the contrary, "[EMTALA's] core purpose is to get patients into the system who might otherwise go untreated and be left without a remedy because traditional medical malpractice law affords no claim for failure to treat." <u>Bryan v. Rectors and Visitors of the Univ. of Va.</u>, 95 F.3d 349, 351 (4th Cir. 1996); <u>see also</u> <u>Hardy v. New York City Health & Hosp. Corp.</u>, 164 F.3d 789, 792-93 (2d Cir. 1999). A hospital need not have a specific intent to deny an emergency patient treatment for any discriminatory reason. <u>See Roberts v. Galen of Virginia, Inc.</u>, 525 U.S. 249, 250 (1999). Instead, a hospital is strictly liable if it fails to comply with EMTALA's terms. <u>See</u> <u>Abercrombie v. Osteopathic Hosp. Founders Ass'n</u>, 950 F.2d 676, 681 (10th Cir. 1991); <u>Stevison v. Enid Health Systems, Inc.</u>, 920 F.2d 710, 713 (10th Cir. 1990) ("We construe this statute as imposing a strict liability standard subject to those defenses available in the act.").

EMTALA has three distinct and severable requirements. First, under 42 U.S.C. § 1395dd(a), a hospital is obligated to provide to all individuals who come to its emergency department seeking examination or treatment, an "appropriate medical screening examination"[1] within the capability of its emergency department, including ancillary services

---

[1] EMTALA does not specifically define "appropriate medical screening examination," but states that its purpose is to identify an "emergency medical condition." 42 U.S.C. § 1395dd(a). 42 U.S.C. §§ 1395dd(e)(1)(A) defines an "emergency medical condition" as one:

> manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result

routinely available to the emergency department, in order to determine whether an emergency medical condition exists. Second, under 42 U.S.C. § 1395dd(b), a hospital must provide such further medical examination and treatment as is necessary to stabilize an individual whom it has determined has an emergency medical condition. Third, under 42 U.S.C. § 1395dd(c), a hospital may not transfer an individual whom it has determined has an emergency medical condition that has not been stabilized unless (a) the individual, upon being informed of the risks, nonetheless requests the transfer, or (b) the physician, either personally or through another qualified medical person, certifies that a transfer would be medically beneficial. Whether a hospital has complied with EMTALA is determined based in significant part on the emergency capabilities of the hospital, its treatment of similarly situated patients, and whether any screening examination provided was appropriate to identify an emergency medical condition. See Eberhardt v. City of Los Angeles, 62 F.3d 1253, 1256-1259 (9th Cir. 1995); Jackson v. East Bay Hospital, 246 F.3d 1248, 1253-1255 (9th Cir. 2001).

### EMTALA's Screening Requirement

The gravamen of the EMTALA claim in this action is that FCHMC failed to provide an appropriate screening examination to plaintiff. "The essence of [EMTALA's] screening requirement is that there be some screening procedure, and that it be administered even-handedly." Correa v. Hosp. San Francisco, 69 F.3d at 1192. Thus, there is both a substantive and a procedural component to an appropriate medical screening under EMTALA: "[a] hospital fulfills its statutory duty to screen patients in its emergency room if it provides for a screening examination reasonably calculated to identify critical medical conditions that may be afflicting symptomatic patients and provides that level of screening uniformly to all those who present substantially similar complaints." Id.; see also Jackson v. East Bay Hosp., 246 F.3d 1248, 1256 (9th Cir. 2001) ("We hold that a hospital satisfies EMTALA's 'appropriate medical screening' requirement if it provides a patient with an examination comparable to the

---

in--(I) placing the health of the individual ... in serious jeopardy; (ii) serious impairment to bodily functions; or (iii) serious dysfunction of any bodily organ or part.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE
SUPPLEMENTAL COMPLAINT; [PROPOSED] SUPPLEMENTAL COMPLAINT                                               -8-

one offered to other patients presenting similar symptoms, unless the examination is so cursory that it is not 'designed to identify acute and severe symptoms that alert the physician of the need for immediate medical attention to prevent serious bodily injury.' " (quoting Eberhardt v. City of Los Angeles, 62 F.3d 1253, 1257 (9th Cir. 1995)).  Under EMTALA, there is an absolute, minimal baseline requirement for screening exams:  a hospital cannot discharge its duty under EMTALA by providing a screening at such a minimal level that it cannot be said that the screening is "appropriate."  See Baber v. Hospital Corp. of America, 977 F.2d 872, 879 n.7 (4th Cir. 1992) (stating that "hospitals could theoretically avoid liability by providing very cursory and substandard screenings to all patients... a hospital's standard may be so low "that it amount[s] to no 'appropriate medical screening'").  Thus, there is an additional requirement in 42 U.S.C. § 1395dd(a) that a hospital, at minimum, provide an examination within its capabilities to determine whether an emergency condition exists, see Repp v. Anadarko Municipal Hosp., 43 F.3d 519, 522 (10th Cir. 1994).  Further, the related resources of a hospital must be utilized if necessary to comply with EMTALA's appropriate screening requirement.  See Power v. Arlington Hospital Association, 42 F.3d 851, 858 (4th Cir. 1994) (affirming a multimillion dollar verdict in a factually similar case where a hospital failed to utilize blood cultures as part of its screening of an emergency patient with a possible infection); Battle ex rel. Battle v. Memorial Hosp., 228 F.3d 544, 558 (5th Cir. 2000) (finding that a rational jury may could have found an EMTALA screening violation where the evidence could be interpreted to show that a patient was discharged without additional procedures being performed to determine the source of his fever and infection).

It is also clear that a hospital may not simply hide behind a lack of standard emergency room procedures, and EMTALA plaintiffs are allowed to look to other sources to show that the screening was inappropriate.  Griffith v. Mt. Carmel Medical Center, 831 F.Supp. 1532, 1544 (D.Kan. 1993) (citing Power v. Arlington Hosp., 800 F.Supp. 1384, 1387 n. 6 (E.D.Va. 1992), where the court specifically held that, in the absence of standard screening procedures, a plaintiff may look to other evidence of differential treatment, including "failure to meet the

standard of care to which the [h]ospital adheres").

Moreover, the appropriateness of a screening is inherently fact-specific; indeed, a combination of relatively common physical symptoms, given the patient's medical history, can indicate an emergency condition in that patient triggering EMTALA. See Correa, 69 F.3d at 1192 (1st Cir. 1995) (holding that "nausea and dizziness ... might well herald the onset of an emergency medical condition in the case of a hypertensive diabetic"); see also Lopez Soto v. Hayawek, 175 F.3d 170, 173 (1st Cir. 1999) (citing Correa and stating further that "a patient who communicates that she feels nauseous or dizzy could be describing a symptom of an emergency medical condition.").

## ARGUMENT

In her proposed supplemental complaint, the plaintiff seeks to amend her allegations based on evidence that has become available since the filing of the pleadings in this action. See Proposed Supplemental Complaint, ¶¶ 4-11. The specific new evidence upon which plaintiff bases this motion is the January 18, 2006 declaration of her retained medical expert, Dr. Peggy Goldman, M.D., M.H.A., F.A.C.E.P., as well as, more generally, the discovery that has taken place in this action since the Court's prior ruling. Dr. Goldman was timely disclosed as an expert on the date of her declaration after being first consulted in this matter approximately one month prior thereto. In her declaration, Dr. Goldman opines, as detailed more fully above, that plaintiff did not receive, both in absolute and relative terms, an appropriate screening under EMTALA.[2] Dr. Goldman opines that, given plaintiff's presentation, an appropriate screening under EMTALA had to include a CBC, blood differential, blood and urine cultures, a CT scan, and a sedimentation rate. Dr. Goldman also makes clear that "the mere performance of some sort of screening examination does not satisfy EMTALA" and that

---

[2] Plaintiff anticipates that FCHMC might argue that Dr. Goldman's declaration constitutes an inadmissible legal opinion. However, that argument would be meritless, as such expert testimony is indeed necessary to establish an EMTALA violation. See del Carmen Guadalupe v. Negron Agosto, 299 F.3d 15, 18 (1st Cir. 2002) (Generally, expert testimony is required to establish an EMTALA violation."); Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo, 248 F.3d 29, 36-37 (1st Cir. 2001) (dismissing a plaintiff's EMTALA claim because of the lack of an expert witness to establish the medical facts); Parker v. Central Kansas Medical Center, 2003 WL 408109 (10th Cir., Feb. 24, 2003) (same).

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE
SUPPLEMENTAL COMPLAINT; [PROPOSED] SUPPLEMENTAL COMPLAINT                -10-

the statute "requires the performance of a screening examination reasonably calculated to identify emergency conditions suggested by the patient's presentation."

Dr. Goldman's opinions in her declaration are consistent with EMTALA's interpretation by federal courts, which have also held that a screening examination which is not reasonably calculated, within the hospital's capability, including its ancillary services, to determine whether a patient's presenting symptoms indicate an emergency condition, is inappropriate, even if similarly situated patients are treated in kind.  See Jackson v. East Bay Hosp., 246 F.3d at 1256; Eberhardt v. City of Los Angeles, 62 F.3d at 1257; Baber v. Hospital Corp. of America, 977 F.2d at 879 n.7;  Repp v. Anadarko Municipal Hosp., 43 F.3d at 522; Power v. Arlington Hospital Association, 42 F.3d at 858; Battle ex rel. Battle v. Memorial Hosp., 228 F.3d at 558. Therefore, Dr. Goldman's opinions cannot be rejected as a basis for plaintiff's proposed supplemental complaint on the ground that they are inconsistent with applicable law.

It is also important to note that the Court's prior Rule 12(b)(6) ruling on the plaintiff's EMTALA claim, as set forth in its September 28, 2004 Order, is not dispositive of the instant motion.  The law of the case is not a bar to a motion under Rule 15(d), which permits supplemental pleadings to cure previously found defects.  See Miller v. Cudahy Co., 567 F.Supp. at 896.  Moreover, a ruling based on a motion to dismiss filed before discovery has occurred is the law of the case only to the extent that subsequent discovery does not invalidate the presumption upon which the motion to dismiss was based.  Hyatt v. Town of Lake Lure, 314 F.Supp.2d 562, 577 (W.D.N.C. 2003).  The law of the case doctrine does not bar further consideration of an issue when there has been an "intervening change of controlling authority, new evidence has surfaced, or the previous disposition was clearly erroneous and would work a manifest injustice." Leslie Salt Co. v. United States, 55 F.3d 1388, 1393 (9th Cir. 1995) (citing Merritt v. Mackey, 932 F.2d 1317, 1320 (9th Cir. 1991); 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, § 4478, at 790).  Further, while the Court relied heavily upon plaintiff's allegations in the First Amended Complaint that triage nurses recorded Christina's weight, pulse, temperature, and observation of her appearance, see First Amended Complaint,

¶¶ 7-8, 9, 13; September 28, 2004 Order, p. 14, to rule that plaintiff could not possibly allege a cursory screening claim, "[t]riaging is not equivalent to a medical screening examination. Triaging merely determines the 'order' in which patients will be seen, not the presence or absence of an emergency medical condition." Federal Register, Vol. 68, Part VII C, Department of Health and Human Services, Centers for Medicare and Medicaid Services, "42 C.F.R. Parts 413, 482, and 489 Medicare Program; Clarifying Policies Related to the Responsibilities of Medicare-Participating Hospitals in Treating Individuals With Emergency Medical Conditions; Final Rule;"[3] see also 42 U.S.C. 1395dd(d)(1)(B)&(C) (indicating that, at least for purposes of EMTALA's civil enforcement provision, that a physician is the party responsible for performing the screening examination, i.e., "any *physician* who is responsible for the examination" and "If, after an initial examination, a *physician* determines"); 42 C.F.R. §§ 488.25, 489.24 (establishing that an EMTALA screening examination must be performed by qualified medical personnel who are either qualified members of a hospital's medical staff or supervised by such a staff member). Indeed, the appropriateness of a screening is inherently fact-specific, Correa, 69 F.3d at 1192; Lopez Soto v. Hayawek, 175 F.3d at 173, and the facts adduced since the Court's ruling justify the filing of the proposed supplemental complaint. It would clearly work a great injustice to deny plaintiff's timely motion to supplement her complaint, where the motion is based upon newly available evidence comporting with the statute and where, given this evidence, the sole remaining basis for the existing ruling would be a legal theory rejected even by the federal agency administering EMTALA.

Nor is there any undue prejudice that will result if FCHMC has to defend itself at trial based on contentions that the EMTALA screening was inappropriate in both absolute and relative terms. Plaintiff does not need to propound any new discovery related to the supplemental claim, and has no additional fact witnesses whose testimony would be relevant

---

[3] An agency's interpretation of its own regulations, so long as it does not violate the Constitution or a federal statute, must be given "controlling weight unless it is plainly erroneous or inconsistent with the regulation." Stinson v. United States, 508 U.S. 36, 45 (1993) (quoting Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414 (1945)).

based solely on the supplemental allegations. Therefore, plaintiff envisions, little, if any, additional fact discovery. Further, plaintiff would not need to designate any additional experts, and expert discovery is still in its beginning stages, with more than two months remaining before the May 31, 2006 expert discovery deadline. Even further, FCHMC has designated experts who are of the opinion that the emergency screening examinations were neither negligent nor in violation of EMTALA, so it is difficult to envision its needing to designate additional experts based on the supplemental allegations. Allowing the proposed supplemental complaint also would not alter the complexity of this case in any material way. Therefore, because there is little, if any, undue prejudice that would result from permitting the proposed supplemental complaint to be filed, and the factual, procedural and legal circumstances dictate that it is justified, the Court should permit its filing. See Lerman v. Chuckleberry Pub., Inc., 521 F.Supp. 228, 232 (S.D.N.Y. 1981); Cabrera v. City of Huntington Park, 159 F.3d at 381. Plaintiff's proposed supplemental complaint clearly complies with Rule 15(d), it should thus be permitted to be filed.

WHEREFORE plaintiff request that the Court permit the filing of the proposed supplemental complaint.

In Fresno, California, this 8th day of March, 2006.

/s/ Kevin G. Little
Kevin G. Little
Attorney for Plaintiff Christina Romar

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE
SUPPLEMENTAL COMPLAINT; [PROPOSED] SUPPLEMENTAL COMPLAINT                -13-

## DECLARATION OF KEVIN G. LITTLE, ESQ.

The undersigned, Kevin G. Little, hereby declares as follows under penalty of perjury:

1. I am the attorney of record for the plaintiff, Christina Romar, in the above-captioned proceeding.

2. The factual contentions in the accompanying motion are true and correct to the best of my knowledge. I also have personal knowledge of the plaintiff's the procedural and evidentiary representations made hereinabove.

3. I have extensive experience in litigating EMTALA actions, having been counsel of record in approximately ten such actions filed in this District and other federal jurisdictions. I also have litigated EMTALA issues on appeal, including serving as lead counsel in one of the most oft-cited decisions on the statute, Correa v. Hospital San Francisco, 69 F.3d 1184 (1st Cir. 1995), cert. denied, 517 U.S. 1136 (1996). Based on my experience litigating EMTALA cases and other medical cases, there is good cause to permit the filing of the proposed supplemental complaint.

4. Attached hereto as Exhibit A is a true and correct copy of the declaration of plaintiff's designated medical expert, Dr. Peggy Goldman. Attached hereto as Exhibit B is a copy of the portion of the Federal Register referred to hereinabove.

5. If called as a witness, I could truly and competently testify as to the foregoing.

Date: March 8, 2006            /s/   Kevin G. Little
                                     Kevin G. Little