1

2

3

4

5

6

7

8

## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

9

CHRISTINA ROMAR, et al.,

10                                    )   1:03-CV-6668-REC-SMS
                                      )
                          Plaintiffs, )   ORDER DENYING WITHOUT PREJUDICE
11        v.                          )   PLAINTIFF'S MOTIONS TO COMPEL
                                      )   DISCLOSURE OF CONFIDENTIAL
12   FRESNO COMMUNITY HOSPITAL AND )   MEDICAL RECORDS AND PRODUCTION OF
     MEDICAL CENTER, et al.,          )   EXPERT DOCUMENTS (DOCS. 60, 62)
13                                    )
                          Defendants. )   ORDER SETTING BRIEFING SCHEDULE
14                                    )   FOR A FUTURE MOTION TO COMPEL
     _____ )   PRODUCTION OF CONFIDENTIAL
15                                        MEDICAL RECORDS

16                                        ORDER DEEMING MOTION FOR LEAVE TO
                                          FILE A SUPPLEMENTAL COMPLAINT
17                                        (DOC. 57 ) TO BE A MOTION FOR
                                          LEAVE TO FILE AN AMENDED
18                                        COMPLAINT

19                                        ORDER DENYING PLAINTIFF'S MOTION
                                          FOR LEAVE TO FILE AN AMENDED
20                                        COMPLAINT (Doc. 57)

21

22

23        Plaintiffs are proceeding with a civil action in this Court.

24   The matter has been referred to the Magistrate Judge pursuant to

25   28 U.S.C. § 636(b) and Local Rules 72-302(c)(1) and 72-303.

26        Plaintiff's motions to file a supplemental complaint, to

27   compel production of confidential medical records, and to compel

28   production of expert documents came on regularly for hearing on

1

April 27, 2006, at 9:30 a.m. in Courtroom 7 before the Honorable
Sandra M. Snyder, United States Magistrate Judge. Samya Burney
appeared for Kevin Little on behalf of Plaintiff; Celene M. Boggs
appeared for Defendant Fresno Community Hospital and Medical
Center; and Jerry D. Cashiros appeared on behalf of Defendant
Mansfield. After argument, the matter was submitted to the Court.

I. <u>Plaintiff's Discovery Motions</u>

On March 26, 2006, Plaintiffs filed motions to compel
disclosure of confidential medical records and production of
expert documents. The motion to compel disclosure of confidential
medical records had previously been before the Court, which had
ruled on them by an order dated October 25, 2006. In its order
the Court expressly stated that if after review of the discovery
ordered provided Plaintiff's experts believed that additional
experts were required, then Plaintiff could renew the motion by
refiling a motion, accompanied by a declaration of the expert,
and with briefing to be submitted by both parties.

Plaintiff's motions to compel did not contain a statement of
grounds, briefing or other concise exposition of Plaintiff's
arguments, or an expert's declaration concerning the subject of
the motion. Plaintiff submitted a group of documents that were
independent of any argument or other explanation of the
significance of the documents and were lacking an evidentiary
foundation.

Fed. R. Civ. P. 7(b) provides that an application to a court
for an order shall be by motion which, unless made during a
hearing or trial, shall be made in writing, shall state with
particularity the grounds therefor, and shall set forth the

2

1 relief or order sought.

2     District courts are authorized to promulgate local rules to
3 expedite the business of the Court. 28 U.S.C. § 2071. Local rules
4 have the force and effect of law so long as they are not
5 inconsistent with statutes or the Federal Rules. 28 U.S.C. §
6 2071; Fed. R. Civ. P. 83; <u>Atchison, Topeka & Santa Fe Railway Co.</u>
7 <u>v. Hercules Inc.</u>, 146 F.3d 1071, 1074 (9th Cir. 1998). A failure
8 to comply with local rules may be punished by the imposition of
9 sanctions. <u>Miranda v. Southern Pacific Transportation Co.</u>, 710
10 F.2d 516, 521 (9th Cir. 1983).

11     Local Rule 78-230(b) requires that except as otherwise
12 provided in the rules or as ordered by the Court, all motions
13 shall be noticed on the calendar of the judge, and the moving
14 party shall file with the clerk not only a notice of motion and
15 motion, but also accompanying briefs, affidavits, if appropriate,
16 and copies of all documentary evidence that the moving party
17 intends to submit in support of the motion.

18     Further, Fed. R. Civ. P. 43(e) provides that when a motion
19 is based on facts not appearing of record, the Court may hear the
20 matter on affidavits presented by the respective parties, but the
21 Court may direct that the matter be heard wholly or partly on
22 oral testimony or deposition.

23     Local Rule 78-230(i) provides that factual contentions
24 involved in pretrial motions shall be initially presented and
25 heard upon affidavits, except that the Court in its discretion
26 may require or allow oral examination of witnesses. Local Rule
27 43-142 states that an affidavit submitted in support of a motion
28 shall identify and attach documents and exhibits offered in

1  support of or in opposition to the motion, unless such documents

2  and exhibits are already in the record and specifically referred

3  to in the motion or opposition. Evidence submitted in support of

4  a motion must be properly authenticated. <u>Hal Roach Studios, Inc.</u>

5  <u>v. Richard Feiner & Co., Inc.</u>, 896 F.2d 1542, 1550-51 (9th Cir.

6  1989).

7      Motions to compel disclosures or responses to discovery must

8  include a certification that the movant has in good faith

9  conferred or attempted to confer with the person or

10  party failing to make the discovery in an effort to secure the

11  information or material without court action. Fed. R. Civ. P.

12  37(a)(2)(A),(B).

13      Local Rule 37-251(a) and (e) provides that except where

14  there has been a complete and total failure to respond to a

15  discovery request or order, or when the only relief sought by the

16  motion is the imposition of sanctions, a hearing of a motion

17  pursuant to Fed. R. Civ. P. 26 through 37, including any motion

18  to exceed discovery limitations or motion for protective order,

19  may be had by the filing of a notice of motion and motion

20  scheduling the hearing date on the appropriate calendar at least

21  twenty-one (21) days from the date of filing. However, the

22  hearing may be dropped from calendar without prejudice if

23  thereafter the joint statement re discovery disputes or an

24  affidavit as set forth in Rule 37-251(c) is not filed on or

25  before three (3) court days prior to the scheduled hearing date.

26  Rule 37-251(d) provides that if counsel for the moving party is

27  unable, after a good faith effort, to secure the cooperation of

28  counsel for the opposing party in arranging the required

4

1  conference, or in preparing and executing the required joint

2  statement, counsel for the moving party may file and serve an

3  affidavit so stating and containing other information directed to

4  be included by the rule.

5      Because of Plaintiff's failure to comply with these

6  requirements, Plaintiff's motions to compel disclosure of

7  confidential medical records and to compel production of expert

8  documents ARE DENIED WITHOUT PREJUDICE.

9      With respect to Plaintiff's motion for disclosure of

10 confidential medical records, the motion is denied without

11 prejudice to Plaintiff's filing the motion in compliance with the

12 pertinent rules of court and in a timely fashion. Plaintiff's

13 counsel represented at the hearing on the motion that it would be

14 filed within a day to be heard by June 2, 2006. The Court

15 indicated that the briefing schedule for such a motion would be

16 as follows: Plaintiff's brief or memorandum to be filed by May 8,

17 2006; Defendants' reply to be filed by May 22, 2006; and the

18 stipulation pursuant to Local Rule 37-251 to be filed no later

19 than the morning of May 30, 2006.

20     With respect to the discovery dispute regarding which

21 Plaintiff brought the motion for production of expert documents,

22 the Court notes that the dispute appears to be of a type

23 appropriately addressed in an informal telephonic discovery

24 conference.

25     II. <u>Motion to File Supplemental Complaint</u>

26         A.  <u>Propriety of a Supplemental, as Distinct from
               Amended, Complaint</u>

27

28     Plaintiff's first claim is for violation of the EMTALA.

Plaintiff is seeking to file a supplemental pleading to add allegations of fact regarding the same treatment that is the scope of the present complaint, namely, treatment that occurred in December 2002, in order to state a claim for inadequate screening under EMTALA, a claim that was pleaded in both the original complaint and FAC, and which was partially dismissed by Judge Coyle twice.

Although Plaintiff alleges that the facts are events occurring after the filing of the complaint, the facts pertinent to the claim all occurred in December 2002. The only events occurring after the filing of the complaint are Plaintiff's receipt of medical records of comparable patients' screening and treatment at Defendant hospital, consultation with Dr. Goldman, a medical expert, and receipt of Dr. Goldman's opinion. Plaintiff seeks to add Dr. Goldman's opinion that the screening exam and treatment were inappropriate as defined by the EMTALA; it was not an acceptable and appropriate medical screening because in view of Plaintiff's symptoms and history, competent medical personnel would have realized that there was a significant possibility that Plaintiff suffered a virulent bacterial infection, and an acceptable and appropriate screening had to include tests not undertaken by Defendant (CBC, blood differential, blood and urine cultures, CT scan, and sed rate).

Rule 15(d) provides:

> Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented. Permission may be granted even though the original pleading is defective in its

> statement of a claim for relief or defense.
> If the court deems it advisable that the adverse
> party plead to the supplemental pleading, it shall
> so order, specifying the time therefor.

The purpose of Rule 15(d) is to promote as complete as possible an adjudication of the dispute between the parties by allowing the addition of claims which arise after the initial pleadings are filed. <u>William Inglus & Sons Baking Co. v. ITT Continental Baking Co.</u>, 668 F.2d 1014, 1057 (9th Cir. 1981).

The decision on a motion for leave to file a supplemental complaint is within the Court's discretion, and such a motion should be granted unless a particular reason for disallowing it appears. <u>Keith v. Volpe</u>, 858 F.2d 467, 473 (9th Cir. 1988). However, a supplemental complaint is limited to adding events or claims arising after the action was originally filed, and it is no longer permissible to add matter occurring before the complaint was filed as was the case under former practice. <u>See</u>, 3 Moore's Federal Practice, § 15.30, p. 15-107 n. 6 (3d ed. 2006).

Here, the essential facts and claims did not occur or arise after the filing of the original complaint.

Therefore, the matter is more correctly considered as a motion for leave to file a second amended complaint. It is permissible to construe a motion for leave to file a supplemental complaint as a motion for leave to file an amended complaint, <u>Frank v. U.S. West Co.</u>, 3 F.3d 1357, 1365 (10th Cir. 1993). The Court therefore proceeds to consider Plaintiff's motion under the law pertinent to a motion for leave to file an amended complaint.

B. <u>Motion to Amend the Complaint</u>

Fed. R. Civ. P. 15(a) provides in pertinent part:

> A party may amend the party's pleading once as a
> matter of course at any time before a responsive
> pleading is served or, if the pleading is one to which
> no responsive pleading is permitted and the action has
> not been placed upon the trial calendar, the party
> may so amend it at any time within 20 days after it
> is served. Otherwise a party may amend the party's
> pleading only by leave of court or by written consent
> of the adverse party; and leave shall be freely given
> when justice so requires. . . .

Although the rule is to be construed liberally, leave to amend is

not automatically granted. <u>Jackson v. Bank of Hawaii</u>, 902 F.2d

1385, 1387 (9th Cir.1990). In determining whether the Court

should exercise its discretion to allow amendments, the following

factors should be considered: (1) whether the movant unduly

delayed seeking leave to amend, or acted in bad faith or with

dilatory motive; (2) whether the party opposing amendment would

be unduly prejudiced by the amendment; 3) whether there have been

repeated failures to cure, and (4) whether amendment would be

futile. <u>Foman v. Davis</u>, 371 U.S. 178, 182, 83 S.Ct. 227, 230

(1962).

### 1) Law of the Case

Plaintiff argues that Judge Coyle's prior order is not law

of the case because Rule 15(d) permits supplemental pleadings to

cure previously found defects. However, Plaintiff may not proceed

pursuant to Rule 15(d).

Plaintiff also argues that a motion to dismiss filed before

discovery has occurred is law of the case only to the extent that

subsequent discovery does not invalidate the presumption upon

which the motion to dismiss was based. However, there is no

indication that any discovery has invalidated Judge Coyle's legal

basis for decision, namely, that Plaintiff must show a screening

1  not designed to identify acute symptoms.

2      Therefore, Judge Coyle's ruling is law of the case.

3      "The law of the case doctrine is a judicial invention

4  designed to aid in the efficient operation of court affairs."

5  Milgard Tempering, Inc. v. Selas Corp. of Am., 902 F.2d 703, 715

6  (9th Cir.1990). Under the doctrine, a court is generally

7  precluded from reconsidering an issue previously decided by the

8  same court, or a higher court in the identical case. See id. A

9  trial judge's decision to apply the doctrine is thus reviewed for

10 an abuse of discretion. See Milgard Tempering, 902 F.2d at 715.

11 United States v. Lummi Indian Tribe, 235 F.3d 443, 452 (9th Cir.

12 2000). A court abuses its discretion in applying the law of the

13 case doctrine only if (1) the first decision was clearly

14 erroneous; (2) an intervening change in the law occurred; (3) the

15 evidence on remand was substantially different; (4) other changed

16 circumstances exist; or (5) a manifest injustice would otherwise

17 result. United States v. Lummi Indian Tribe, 235 F.3d at 452-53

18 (citing United States v. Cuddy, 147 F.3d 1111, 1114 (9th Cir.

19 1998)).

20      There has been no intervening change in the law or

21 circumstances; there is no indication that a manifest injustice

22 would otherwise result. Further, as the following analysis

23 demonstrates, Judge Coyle's rulings were not clearly erroneous.

24                    2) Sufficiency of Allegations of the Proposed
                         Supplement or Amendment
25

26                         a) Background

27      Plaintiff's two earlier attempts to allege a claim of

28 inadequate screening were unsuccessful because the Court

9

1  essentially determined that Plaintiff's pleading of the claim was
2  legally insufficient and that any effort to amend would be
3  futile.

4      In the original complaint, Plaintiff alleged that Plaintiff
5  arrived at Defendant hospital on December 10, 2002; she presented
6  with specific symptoms (fever of 103 degrees, elevated pulse,
7  slightly elevated respiratory rate, weight of 15 kilograms); a
8  fever protocol was instituted, but the medical record reveals no
9  assessment of urgency/priority of condition on the triage sheet,
10 no inventory of systems, and no order for any blood work-up; a
11 physician assessed her, administered Tylenol and Amoxicillin, and
12 discharged her ten minutes later with prescriptions and notations
13 of ear infection and fever. (Complt at 2-3.)

14     Plaintiff further alleged that on December 12, 2002,
15 Plaintiff returned to the Defendant's emergency room with
16 bilateral periorbital swelling with onset that day, fever, a
17 slightly elevated respiratory rate, and weight of 15 kilgrams;
18 Plaintiff at triage was classified as an urgent patient; a nurse
19 practitioner examined Plaintiff and noted fever and sore throat,
20 swollen eyes, no rash, and placed a question mark next to the
21 entry for allergic reaction on the exam sheet; after consultation
22 with two physicians, including Defendant Dr. Mansfield, Plaintiff
23 was taken off antibiotics and treated with three doses of
24 Benadryl, but no system inventory, blood work-up, or temperature
25 monitoring was undertaken. (Id. at 3.)

26     Plaintiff further alleged that she returned to Defendant's
27 emergency room on December 14, 2002, with bilateral preorbital
28 swelling including the forehead area, elevated pulse, fever,

lethargy, and 16.5 kilograms weight. A nurse practitioner examined Plaintiff in the emergency room and noted fever, bilateral eye swelling, crusty discharge from the eyes, and ear pain; no objective signs of allergic reaction were noted, and no blood work-up was done. Plaintiff was discharged with a diagnosis of allergic reaction to Amoxicillin with the same medications she had already taken for two days. (Id. at 3-4.)

On December 17, 2002, Plaintiff was admitted to another hospital, where blood work and a CT scan revealed a virulent infection, sinus abscesses, and a generally deteriorating condition that resulted in severe infectious processes and injury. (Id. at 4.)

Plaintiff alleged that Defendant Hospital breached its statutory duty to provide an appropriate emergency screening examination "within its capabilities to identify an emergency condition," and also failed to provide an appropriate emergency screening examination required by EMTALA in relative terms as well, i.e., compared to similarly situated patients seeking emergency treatment. Further, to the extent that Defendant determined that Plaintiff had an emergency medical condition, it failed to provide her with stabilizing treatment as required by EMTALA. (Cmplt. at 5.)

In the order of May 14, 2004, Judge Coyle noted that Plaintiff had attempted to allege EMTALA violations in the form of inadequate screening and failure to give stabilizing treatment. Plaintiff had alleged that Defendant hospital "failed to provide Christina with the appropriate emergency screening examination required by EMTALA, both in relative terms, i.e.,

11

compared to similarly situated patients seeking emergency treatment...." Plaintiff's attempt to allege inadequate screening in that sense was ruled deficient because it was bereft of facts and amounted only to a legal conclusion.

With respect to cursory screening, Plaintiff had not explicitly identified the theory of relief in the complaint; Plaintiff had alleged that the hospital had failed to provide an exam within the capabilities of the hospital to identify an emergency condition, and her screening was deficient because it did not identify her condition but would have if other tests and procedures had been used. Judge Coyle ruled that this was insufficient because it amounted to a claim of negligent screening, or failure to adhere to an absolute standard of screening, and not cursory screening. Because Plaintiff alleged that other tests should have been performed, but did not allege that the examinations she received were not designed to determine if an emergency medical condition was present, she failed to allege a claim of cursory screening and had not stated a screening claim. Her EMTALA claim was dismissed.

In the FAC, Plaintiff alleged, in addition to the facts summarized above, the following:

> 16. Christina is informed and believes that she did not receive a screening examination on December 10, 12, or 14, 2002, that similarly situated patients would have received or been entitled to, either under the emergency room policies applicable to Community Medical Center-Fresno, in comparison to the emergency records of similarly situated patients, or under the minimal screening standards recognized by pediatric emergency medical associations. Additionally, Christina is informed and believes that she did not receive a screening examination that was more than cursory or designed to identify the acute and severe symptoms that she had on those occasions.... Further, Christina

12

1   is informed and believes that, on December 10, 12,
2   and 14, 2002, Community Medical Center-Fresno had
    the capability of providing her with a screening
3   exam that similarly situated patients would have
    received and been entitled to, and it also had the
4   capability of providing her with a screening examination
    that could have identified the acute and severe symptoms
5   that she then had.
    . . . .
6   21. Specifically, as alleged above, Christina did
    not receive a screening examination comparable to
7   what similarly situated patients seeking emergency medical
    treatment would have received and been entitled to receive.
8   Christina also did not receive a screening examination
    that was more than cursory or designed to identify an
9   emergency condition. Further, the provision of an
    appropriate screening examination was well within
10  the capabilities of Community Medical Center-Fresno
    at the time of Christina's emergency presentations.

11  (FAC at 4-6.)

12       In the order of September 2005, Judge Coyle ruled that

13  Plaintiff's disparate screening claim could go forward through

14  discovery despite Plaintiff's failure to allege a factual basis

15  for the claim because the failure to allege specific facts could

16  have been caused by Plaintiff's lack of access to medical records

17  of Defendants' other patients that would have supported her

18  claim. (Order at 10-12.)

19       With respect to Plaintiff's cursory screening claim, Judge

20  Coyle ruled that no claim was stated by the allegations that

21  Plaintiff was informed and believed that she did not receive a

22  screening exam that was more than cursory or designed to identify

23  the acute and severe symptoms that she had on those occasions.

24  Although that specific language tracked the Court's language

25  regarding adequate allegations, Judge Coyle concluded that

26  Plaintiff's cursory screening claim was nevertheless subject to

27  dismissal for a separate reason, namely, that the allegations of

28  the claim as a whole were self-defeating. (Id. at 14.) Because a

1  cursory screening claim requires an allegation that the screening

2  was not designed to identify acute symptoms, and because

3  Plaintiff's own allegations demonstrated that the screening

4  Plaintiff received actually identified acute symptoms (weight,

5  pulse, discharge, temperature) and resulted in diagnosis and

6  treatment, the claim was insufficient. The Court stated,

> 7  Upholding Plaintiff's cursory screening claim would
>    eviscerate any distinction between EMTALA actions
> 8  and state law actions for negligent treatment and
>    misdiagnosis. Under Plaintiff's theory of EMTAL[A],
> 9  every time a patient received negligent treatment,
>    he or she could argue that a different test would have
> 10 uncovered his or her true malady. Such a claim, however,
>    would properly be characterized as a negligent screening
> 11 claim that is not cognizable under EMTALA. Thus, because
>    Plaintiff's screening actually identified acute symptoms,
> 12 Plaintiff's cursory screening claim cannot proceed.
>    Accordingly, Defendant's motion to dismiss is granted
> 13 in part.

14 (Order at 15.)

15                    b) Analysis of Futility

16     The standard for a cursory screening claim was articulated

17 by Judge Coyle. In the order of May 14, 2004, he stated that in

18 order to proceed with an EMTALA claim for a cursory screening,

19 Plaintiff could not argue that the screening was negligent or

20 defective; rather, she had to allege that the screening she

21 actually received was not designed to identify acute symptoms.

22 (Order at 13, 14.)

23     Section 42 U.S.C. § 1395dd(a) provides:

24     (a) Medical screening requirement

> 25 In the case of a hospital that has a hospital
>    emergency department, if any individual (whether
> 26 or not eligible for benefits under this subchapter)
>    comes to the emergency department and a request
> 27 is made on the individual's behalf for examination
>    or treatment for a medical condition, the hospital must
> 28 provide for an appropriate medical screening examination

                              14

1     within the capability of the hospital's emergency
department, including ancillary services routinely available
2     to the emergency department, to determine whether or not an
emergency medical condition (within the meaning of
3     subsection (e)(1) of this section) exists. (Emphasis added.)

4 Section 1395dd(e)(1) provides in pertinent part:

5     (e) Definitions

6     In this section:

7     (1) The term "emergency medical condition" means--

8     (A) a medical condition manifesting itself by acute
symptoms of sufficient severity (including severe pain)
9     such that the absence of immediate medical
attention could reasonably be expected to result in--

10

11     (i) placing the health of the individual (or, with
respect to a pregnant woman, the health of the woman or
her unborn child) in serious jeopardy,

12

13     (ii) serious impairment to bodily functions, or

14     (iii) serious dysfunction of any bodily organ or
part....

15     EMTALA was enacted to protect indigent or uninsured people's

16 access to emergency health care by preventing hospitals from

17 refusing to treat patients or releasing them before an emergency

18 medical condition has stabilized. Jackson v. East Bay Hospital,

19 246 F.3d 1248, 1253 (9th Cir. 2001)(holding that diagnosis that

20 failed to identify the cause of an emergency medical condition,

21 accompanied by treatment of the symptoms, did not constitute

22 cursory screening). In Jackson, the court stated:

23     "The statutory language of the EMTALA clearly
declines to impose on hospitals a national standard of
24     care in screening patients." Eberhardt, 62 F.3d at
1258. Instead, the "touchstone is whether, as § 1395dd
25     dictates, the procedure is designed to identify an
'emergency medical condition,' that is manifested by
26     'acute' and 'severe' symptoms." Id. Seven of our sister
circuits have held that to comply with this
27     requirement, a hospital only must provide a screening
examination that is comparable to that offered to other
28     patients with similar symptoms. See Correa v. Hosp. San

Francisco, 69 F.3d 1184, 1192-93 (1st Cir.1995) ("[F]aulty screening, in a particular case, as opposed to disparate screening or refusing to screen at all, does not contravene the statute."); Baber v. Hosp. Corp. of Am., 977 F.2d 872, 879 (4th Cir.1992) ("[W]hile EMTALA requires a hospital emergency department to apply its standard screening examination uniformly, it does not guarantee that the emergency personnel will correctly diagnose a patient's condition as a result of this screening."); Marshall v. E. Carroll Parish Hosp. Serv., 134 F.3d 319, 323-24 (5th Cir.1998)("[A] treating physician's failure to appreciate the extent of the patient's injury or illness... may constitute negligence or malpractice, but cannot support an EMTALA claim for inappropriate screening... It is the plaintiff's burden to show that the Hospital treated her differently from other patients"); Cleland v. Bronson Health Care Group, Inc., 917 F.2d 266, 272 (6th Cir.1990) ("If [the hospital] acts in the same manner as it would have for the usual paying patient, then the screening provided is 'appropriate' within the meaning of the statute."); Summers v. Baptist Med. Ctr. Arkadelphia, 91 F.3d 1132, 1139 (8th Cir.1996) (en banc) ("[W]e hold that instances of 'dumping' or improper screening of patients for a discriminatory reason, or failure to screen at all, or screening a patient differently from other patients perceived to have the same condition, all are actionable under EMTALA. But instances of negligence in the screening or diagnostic process, or of mere faulty screening, are not."); Holcomb v. Monahan, 30 F.3d 116, 117 (11th Cir.1994) ("As long as a hospital applies the same screening procedures to indigent patients which it applies to paying patients, the hospital does not violate this section of the Act."); Gatewood v. Wash. Healthcare Corp., 933 F.2d 1037, 1041 (D.C.Cir.1991)("[A] hospital fulfills the 'appropriate medical screening' requirement when it conforms in its treatment of a particular patient to its standard screening procedures.").

In Eberhardt, we did not explicitly adopt this comparative test as the standard for compliance with § 1395dd(a), but we did cite Baber, Cleland, and Gatewood, and we noted that the appellants in that case did not allege that the challenged screening differed from the examination provided to comparable patients. 62 F.3d at 1258. We now adopt this comparative test. We hold that a hospital satisfies EMTALA's "appropriate medical screening" requirement if it provides a patient with an examination comparable to the one offered to other patients presenting similar symptoms, unless the examination is so cursory that it is not "designed to identify acute and severe symptoms that alert the physician of the need for immediate medical attention to prevent serious bodily injury." Eberhardt, 62 F.3d

1    at 1257. (Emphasis added.)

2  <u>Jackson</u>, 246 F.3d at 156-57.

3        Here, as Judge Coyle noted in previous orders, the facts

4  alleged in the FAC included a screening process in which

5  Plaintiff's acute symptoms were identified, and a diagnosis was

6  made. Plaintiff seeks to supplement the FAC with the declaration

7  of Dr. Goldman, in which she opines that to a reasonable degree

8  of medical probability, the screening examination Plaintiff

9  received was inappropriate as defined under the EMTALA because:

10        ... <u>the history obtained from the plaintiff during
          her emergency admissions raised a significant possibility
11        that she was suffering from a virulent bacterial
          infection that would constitute a most serious
12        emergency condition.</u> This prospect should have been
          recognized by competent emergency medical
13        practitioners based on the history obtained from
          plaintiff and her presentation upon being examined
14        during her emergency admissions. (Emphasis added.)

15
   (Decl. at ¶ 4.) Dr. Goldman used the term "history," which is
16
   reasonably understood as including Plaintiff's reported and
17
   observed symptoms. Dr. Goldman further declared that had the
18
   screening and stabilization process not failed, Plaintiff would
19
   have had a reasonable medical probability of avoiding lengthy
20
   hospitalization, subsequent surgical interventions, and ongoing
21
   treatment. Thus, Dr. Goldman's own declaration reflects that
22
   Plaintiff's history and symptoms revealed a significant
23
   possibility that Plaintiff was suffering from a virulent
24
   bacterial infection, which would constitute a "most serious"
25
   emergency condition, which in turn is reasonably understood as a
26
   condition that absent treatment would place Plaintiff's health in
27
   serious jeopardy. Therefore, the proposed supplemental complaint
28

1    on its face is self-defeating because it reveals on its face that
2    a screening process took place, acute symptoms of a serious
3    medical condition were identified, and treatment was afforded to
4    Plaintiff. Given these facts, it cannot be inferred that the
5    screening process was so cursory that it was not designed to
6    identify acute and severe symptoms that alert the physician of
7    the need for immediate medical attention to prevent serious
8    bodily injury.

9         Plaintiff argues that the statute requires that the
10   screening be within the capabilities of the hospital to determine
11   whether an emergency condition exists, and that Defendant
12   hospital clearly had the capability to perform the blood tests
13   and other further diagnostic procedures that Plaintiff claims
14   were required for screening. However, this is merely a recasting
15   of the basic assertion that the hospital could have done more,
16   not a contention that what the hospital did not was not designed
17   to identify acute symptoms.

18        The cases cited by Plaintiff do not support Plaintiff.
19   In Jackson v. East Bay Hospital, 246 F.3d at 1256 (9th Cir. 2001),
20   the court upheld a determination that a screening that did not
21   identify a physical ailment was nevertheless sufficient to
22   satisfy the hospital's screening obligation where the hospital
23   followed its own guidelines, the plaintiff was seen by a doctor
24   and tests were ordered, there was no evidence of disparate
25   treatment, and there was no evidence that the exams were not
26   designed to identify acute symptoms. In Eberhardt v. City of Los
27   Angeles, 62 F.3d at 1257 (9th Cir. 1995), the court found no
28   screening violation where a hospital failed to discern that a

18

1 patient was suicidal because there was no evidence of severe

2 symptoms that required immediate medical attention and no

3 evidence of disparate treatment; the court adverted to the

4 possibility of a screening so minimal as to be inadequate.

5    In Baber v. Hospital Corp. of America, 977 F.2d 872, 879 n.

6 7 (4th Cir. 1992), it was held sufficient if the hospital's

7 standard screening procedure was applied uniformly to all

8 patients in similar medical circumstances; where there was

9 examination, diagnosis, and treatment it was not an instance of

10 screening being so substandard that it did not amount to

11 screening at all. In Repp v. Anadarko Municipal Hospital, 43 F.

12 3d 519, 522 (10th Cir. 1994), it was held that failure to take a

13 complete medical history and to obtain a full list of medications

14 was not a serious deviation from standard screening which

15 required the history and list, and that a screening was adequate

16 where a hospital adheres to its own standard procedures. Power v.

17 Arlington Hospital Association, 42 F.3d 851, 858 (4th Cir. 1994),

18 was not simply a screening case but was also a differential

19 treatment case in which the Plaintiff clearly presented evidence

20 from which a jury could conclude that she was treated differently

21 from other patients presenting to the emergency room, and that

22 the hospital did not apply its standard screening procedure

23 uniformly. The court concluded that the evidence was sufficient

24 to meet the threshold requirement of an EMTALA claim, namely that

25 the screening provided deviated from that given to other

26 patients; proof of a bad motive was not required for liability.

27 The court then went on to discuss the type of controverting

28 evidence the hospital and plaintiff could introduce with respect

1 to the hospital's own standard of screening and application

2 thereof. In <u>Battle ex rel. Battle v. Memorial Hospital</u>, 228 F.3d

3 544, 558 (5th Cir. 2000) the evidence that raised an issue of fact

4 on the screening claim consisted of the hospital's failure to

5 follow its own published procedures coupled with bases for

6 motivation to discharge the patient (race, poverty, lack of

7 insurance); any failure of the hospital to do all that it could,

8 or the presence of mistakes in medical judgment, were not the

9 determinative factors.

10     In summary, Judge Coyle's ruling were not clearly erroneous.

11                3) <u>Delay and Prejudice</u>

12     Aside from the futility issue, the Court concludes that

13 Plaintiff has delayed, and prejudice appears. With respect to

14 delay, the issue presented is whether the party seeking to amend

15 knew or should have known of the facts and theories raised by the

16 amendment in the original pleading. <u>Jackson v. Bank of Hawaii</u>,

17 902 F.2d 1385, 1388 (9th Cir. 1990). Here, Plaintiff has

18 previously attempted to plead a screening claim on a theory not

19 cognizable under the statute, namely, even though a screening

20 process was followed and acute symptoms of an emergency medical

21 condition were discovered and treated, the screening was

22 inadequate because more should have been done to achieve a

23 correct diagnosis. Plaintiff did not seek to consult an expert

24 before filing the FAC, and Plaintiff waited months after the

25 rulings on the motion to dismiss and even after consulting with

26 Plaintiff's expert to attempt again to amend the complaint.

27     Fact discovery closed in December 2005. Expert discovery was

28 exchanged in January 2006. The expert discovery deadline is May

31, 2006. Defendants assert that their experts did not address
the cursory screening claim and thus Defendants would have to
incur additional and otherwise unnecessary costs if the complaint
were amended because of the amendment itself and Plaintiff's
delay; Defendant would have to bring another motion to challenge
the sufficiency of any statement of a screening claim, engage in
further discovery, have its experts address the new claim and
incur otherwise avoidable costs in a short period of time before
the May 31, 2006 cut-off. If the expert discovery deadline were
continued, trial would have to be continued.

Prejudice may be found where significant or extensive
discovery is necessitated by amendment under circumstances where
the factual issue has already been litigated or the litigation is
radically shifted by the amendment. <u>Missouri Housing Development
Commission v. Brice</u>, 919 F.2d 1306, 1316 (8th Cir. 1990)
(disallowing leave to amend an answer when it would have
permitted a party to reverse a factual position on an issue
previously within the scope of a summary judgment motion);
<u>Jackson v. Bank of Hawaii</u>, 902 F.2d 1385, 1387 (9th Cir. 1990)
(disallowing amendment where it would have required relitigation
of a portion of a claim and where the additional discovery
necessitated by amendment would have included repetition of
costly discovery proceedings involving company officers and
employees taken away from their normal duties).

Accordingly, Plaintiff's motion for leave to file an amended
complaint IS DENIED.

IT IS SO ORDERED.

Dated: __April 28, 2006__                    _____/s/ Sandra M. Snyder_____

icido3                                    UNITED STATES MAGISTRATE JUDGE