1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **CHRISTINA ROMAR, a minor suing through her mother and legal representative, CORA ROMAR,** )<br>)<br>) | **CIV F 03-6668 AWI SMS** |
| **Plaintiff,** )<br>) | **ORDER ON PLAINTIFF'S MOTION FOR RECONSIDERATION AND** |
| **v.** )<br>) | **MOTION TO SHORTEN TIME** |
| **FRESNO COMMUNITY HOSPITAL AND MEDICAL CENTER, and DR. THOMAS MANSFIELD,** )<br>)<br>)<br>) | |
| **Defendants.** )<br>)<br>_____) | |

Trial in this matter is currently set for November 5, 2008.  The Pre-Trial conference is currently set for September 24, 2008.  The Settlement Conference is set for September 15, 2008. On August 29, 2008, Plaintiff filed a motion for reconsideration and a request to shorten time. Plaintiff requested that the reconsideration motion be held on September 24, 2008, but prior to the pre-trial conference.  The Court has reviewed Plaintiff's motion and request and will issue the following order.

**Procedural History & Plaintiff's Argument**

Plaintiff Christina Romar brought suit against Fresno Community Hospital and Medical Center alleging violations of the 42 U.S.C. § 1395dd ("EMTALA").[1]  On May 14, 2004, the Court dismissed Plaintiff's complaint.[2]  An amended complaint was filed and, on September 28,

---

[1]A more complete recitation of the underlying facts of this case may be found in the motions for summary judgment.  See Court's Docket Doc. Nos. 134, 135.

[2]This case was assigned to Judge Coyle until June 5, 2006.  See Court's Docket Doc. No. 74.

2004, portions of the amended complaint were again dismissed.  In particular, Plaintiff's claim that she received a mere "cursory screening," see Jackson v. East Bay Hospital, 246 F.3d 1248, 1256 (9th Cir. 2001), was dismissed without leave to amend.  The Court reasoned:

> A cursory screening claim requires an allegation that the screening was not designed to identify acute symptoms.  Plaintiff's FAC, however, alleges that the screening that Christina Romar actually received identified acute symptoms.  The emergency room nurses weighed Christina, took her pulse, noted discharge from her eyes, and took her temperature.  Thus, the FAC alleges that Christina was identified as having acute symptoms and was diagnosed and treated accordingly.
>
> Although Christina's diagnosis and treatment may have been incorrect, Plaintiff cannot claim that Christina was not assessed.  The fact that her screening may have been negligent cannot support her EMTALA cursory screening claim. . . . Thus, because Plaintiff's screening actually identified acute symptoms, Plaintiff's cursory screening claim cannot proceed.

Court's Docket Doc. No. 36 at pp. 13-14.

On March 8, 2006, Plaintiff filed a motion for leave to file a supplemental complaint with the Magistrate Judge.  See Court's Docket Doc. No. 57.  As part of the motion, Plaintiff attempted to reinstate her "cursory screening" claim and argued inter alia that the Court's order regarding that claim was erroneous because it confused or conflated "an appropriate medical screening" with "triage."[3]  See id.  On May 1, 2008, the Magistrate Judge denied Plaintiff's motion.  See Court's Docket Doc. No. 70.

On August 29, 2008, Plaintiff filed this motion requesting reconsideration of the order dismissing the "cursory screening" claim.  Quoting the Federal Register, Plaintiff argues that triaging is not the equivalent of a medical screening examination and that triaging merely determines the order in which one is seen.  Plaintiff argues that the motion to dismiss overlooks the clear difference between a triage and a medical screening examination under EMTALA, and the recording of Christina's weight, pulse, temperature, and appearance by triage nurses should not preclude a claim based on a theory that she received a cursory screening.  "Because the law is clear that Christina's triage, whatever its nature, has no bearing on whether she received an

---

[3]Plaintiff again attempted to raise the issue of the propriety of the "cursory screening" claim and the difference between triage and an "appropriate medical screening" in a footnote in her opposition to summary judgment.  See Court's Docket Doc. No. 106.  The Court did not address Plaintiff's argument because a footnote in an opposition to summary judgment is an improper proper way to seek reconsideration or address prior rulings with which a party disagrees.  See Court's Docket Doc. No. 135.

EMTALA compliant screening, justice demands that this prior ruling be corrected."  Plaintiff's Motion at 7.

*Legal Standard*

Local Rule 78-230(k) provides:

> Whenever any motion has been granted or denied in whole or in part, and a subsequent motion for reconsideration is made upon the same or any alleged different set of facts, it shall be the duty of counsel to present to the Judge or Magistrate Judge to whom such subsequent motion is made an affidavit or brief, as appropriate, setting forth the material facts and circumstances surrounding each motion for which reconsideration is sought including:
> (1)   when and to what Judge or Magistrate Judge the prior motion was made,
> (2)   what ruling, decision or order was made thereon,
> (3)   what new or different facts or circumstances are claimed to exist which did not exist or were not shown upon such prior motion, or what other grounds exist for the motion, and
> (4)   why the facts or circumstances were not shown at the time of the prior motion.

L.R. 78-230(k).  Courts have distilled three major grounds that justify reconsideration: (1) an intervening change in the controlling law, (2) the availability of new evidence, and (3) the need to correct clear error or prevent manifest injustice.  See School Dist. No. 1J v. AC&S, Inc., 5 F.3d 1255, 1263 ((9th Cir. 1993); Kern-Tulare Water Dist. v. City of Bakersfield, 634 F.Supp. 656, 665 (E.D.Cal.1986), rev'd in part on other grounds, 828 F.2d 514 (9th. Cir, 1987).

*Discussion*

As an initial matter, the Court is concerned about the timing of Plaintiff's motion.  The ruling from which Plaintiff seeks reconsideration occurred in September of 2004.  The issue was again raised in March of 2006 before the Magistrate Judge.  Now, as the pre-trial conference approaches, Plaintiff raises the issue in September 2008.  There is no explanation why Plaintiff has waited over two years to raise the issue again.[4]  The Local Rule does not prescribe a time limit for filing reconsideration motions.  However, given that discovery has long since closed, the deadline for dispositive motions has passed, we are approaching the pre-trial conference and trial, and the motion is not based on circumstances that have changed (such as new law or newly

---

[4]The Court recognizes that the issue was raised in a footnote in the summary judgment opposition, but that is plainly insufficient.

1    discovered evidence), the timing of the reconsideration motion is arguably unreasonable.

2            Nevertheless, Plaintiff does not challenge the substance of the ruling that acute symptoms

3    were actually detected and treated.[5]  Rather, the substance of Plaintiff's motion is that clear error

4    was committed in ruling on the "cursory screening" claim because the Court wrongly conflated

5    triage with an appropriate medical screening.  Plaintiff's argument relies heavily on a response to

6    a comment by the department of health and human services.  The response read: "Triaging is not

7    equivalent to a medical screening examination.  Triaging merely determines the 'order' in which

8    patients will be seen, not the presence or absence of an emergency medical condition."  Federal

9    Register, Vol. 68, No. 174, p. 53236 (September 9, 2003).  While this response supports

10   Plaintiff's position, the Court cannot say that the September 2004 ruling was clear error.

11           "Triage is a procedure, first used by military hospitals, to perform an initial assessment of

12   a patient's symptoms in order to direct the patient to the area of care commensurate with his

13   condition."  Phillips v. Hillcrest Med. Ctr., 244 F.3d 790, 795 n.1 (10th Cir. 2001).  The Court is

14   aware of no cases that have relied on the Federal Register response or of any cases that have held

15   specifically that triage is not the same as an "appropriate medical screening" for EMTALA.

16   However, other courts have performed analyses that have treated triage and "appropriate medical

17   screening" as similar, if not identical.  For example, the First Circuit has stated that 42 U.S.C. §

18   1395dd(a) "imposes a duty to triage" which "takes the form of a requirement that a covered

19   hospital perform an 'appropriate medical screening examination' on 'any individual' who 'comes

20   to the emergency department' seeking examination or treatment."  Lopez-Soto v. Hawayek, 175

21   F.3d 170, 172-73 (1st Cir. 1999).  In *Parker v. Salina Reg'l Health Ctr., Inc.*, 463 F.Supp.2d

22   1263, 1266 (D. Kan. 2006), the district court stated that, under EMTALA, "a hospital must

23   conduct an 'appropriate' medical screening examination, or triage, to determine whether a patient

24   is suffering from an emergency medical condition."  In *Brenord v. Catholic Med. Ctr. of

25   Brooklyn & Queens, Inc.*, 133 F. Supp. 2d 179, 187 (E.D. N.Y. 2001), the district court noted that

26

27           [5]A hospital meets its obligation to provide an "appropriate medical screening" under EMTALA when it,
     "provides a patient with an examination comparable to the one offered to other patients presenting similar symptoms,

28   unless the examination is so cursory that it is not designed to identify acute and severe symptoms that alert the
     physician of the need for immediate medical attention to prevent serious bodily injury."  Baker v. Adventist Health,
     Inc., 260 F.3d 987, 995 (9th Cir. 2001); Jackson, 246 F.3d at 1256.

1  the "screening policy" was followed where the screening was performed by a triage nurse and the

2  "screening policy" appeared to be a specified form of triage.[6]  In *Garza v. City & County of San*

3  *Francisco*, 2006 U.S. Dist. LEXIS 89816, *10-*11 (N.D. Cal. 2006), the Court refused to reopen

4  the case and reaffirmed its prior holding that, "plaintiff had provided no evidence that the triage

5  screening was not appropriate within the capability of the hospital's emergency department, or

6  that he suffered from an acute or severe medical condition."  In *Nelson v. Calvin*, 2002 U.S. Dist.

7  LEXIS 14164, *7-*8 (D. Kan. 2002), a triage policy that required a triage nurse to "complete an

8  'assessment/interview' of each patient," "obtain a complete set of vital signs as per protocols,"

9  and document certain items was identified as the "medical screening polic[y]" at issue in the

10  case.  Also, a triage exam was one component of a hospital's screening policy in *Bergwall v.*

11  *MGH Health Servs.*, 243 F.Supp.2d 364, 372-73 (D. Md. 2002) and *Hutchinson v. Greater*

12  *Southeast Community Hosp.*, 793 F.Supp. 6, 8 (D. D.C. 1992).

13          It is unnecessary for the Court to determine whether, under EMTALA, a triage exam is a

14  screening exam, only one facet of a screening exam, or, as Plaintiff contends, something that has

15  no bearing on a screening exam.  The motion before the Court is one for reconsideration based

16  only on the "clear error" of conflating a triage with an appropriate screening.  The above sources

17  show that the status of a triage exam under EMTALA is not clear.  Further, Plaintiff does not

18  address the substance of the September 2004 ruling that acute symptoms were actually identified

19  and treated.  Accordingly, Plaintiff has not shown "clear error" to justify reconsideration of the

20  September 2004 order.

21          Accordingly, IT IS HEREBY ORDERED that Plaintiff's motion for reconsideration and

22  request to shorten time are DENIED.

23  IT IS SO ORDERED.

24  **Dated:   September 4, 2008**                      **/s/ Anthony W. Ishii**
                                                        CHIEF UNITED STATES DISTRICT JUDGE

25

26          [6]The policy read: "Procedure: The Emergency Department Triage Nurse will:

27  (1) Triage each pregnant patient presenting to the Emergency Department as outlined in policy and procedure
number 9.1.1; (2) Document the patient's expected date of confinement (EDC) and last menstrual period (LMP) on

28  the triage form; (3) Assess the patient for signs and symptoms of active labor. . . . (5) A pregnant woman estimated to
be less than 20 weeks gestation is to be assigned to a treatment area appropriate to her needs."  Brenord, 133
F.Supp.2d at 187.