UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA ROMAR, a minor suing through her mother and legal representative, CORA ROMAR,<br><br>   Plaintiff,<br><br>   v.<br><br>FRESNO COMMUNITY HOSPITAL AND MEDICAL CENTER; DR. THOMAS MANSFIELD, et al.,<br><br>   Defendants. | 1:03-cv-06668-AWI-SMS<br><br>AMENDED FINDINGS AND RECOMMENDATION RE: PETITION FOR COMPROMISE OF DISPUTED CLAIMS OF MINOR (Docs. 187, 183), SETTING NEW DUE DATE FOR FILING OF OBJECTIONS<br><br>**DUE DATE: JUNE 30, 2009** |

   Plaintiffs are proceeding with a civil action in this Court. The matter has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rules 72-302 and 72-303. Pending before the Court is Plaintiff's petition for approval of compromise of disputed claims of the minor Plaintiff, filed on April 29, 2009, with exhibits that include the minor's compromise form and attachments.

   The petition came on regularly for hearing on May 29, 2009, at 9:30 a.m. in Courtroom 7 before the Honorable Sandra M. Snyder, United States Magistrate Judge. Kevin G. Little appeared on behalf of Plaintiff, and Celene Resong appeared on behalf of

1

Defendant Fresno Community Hospital and Medical Center (FCHMC). The minor's natural mother, who functions as the minor's legal representative, represented the minor's interests and appeared as the minor's general guardian. After argument and supplemental briefing, the matter was submitted to the Court.[1]

The Court has reviewed the relevant portions of the file and petition for compromise, which pursuant to Local Rule 17-202(b)(2), include the age and gender of the minor; the nature of the claims to be settled or compromised; the facts and circumstances out of which the claims arose, including the time, place, and persons involved; the manner in which the compromise amount or other consideration was determined; and additional information as is required to enable the Court to determine the fairness of the settlement, such as the nature, extent and permanence of the injury in a personal injury case. Further, the Court has considered the minor's counsel's disclosure of interest and the terms of counsel's compensation.

At the hearing, the attendance of the minor was excused. The legal representative was sworn and questioned by her counsel and by the Court to ensure that she understood each and every term of the settlement agreement, was satisfied that the settlement was fair for the minor, and that the settlement was being entered without any reservations whatsoever.

A district court has the power to make such orders as it

---

[1] Literally on the eve of the hearing on the petition, Defendant FCHMC filed a document docketed as a supplemental status report that in reality was Defendant FCHMC's supplemental briefing on the application of Cal. Bus. and Prof. Code § 6146 to the amount of attorney's fees to be recovered by Plaintiff's counsel. Plaintiff was given an opportunity to file a responsive supplemental brief after the hearing, and after it was filed, the matter was submitted to the Court.

2

deems proper for the protection of an infant or incompetent. Fed. R. Civ. P. 17(c). A claim by or against a minor or incompetent person may not be settled or compromised without a court order by the assigned judge who approves the settlement or compromise. Local Rule 17-202. Federal Courts generally require that claims by minors and incompetents be settled in accordance with applicable state law. William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, <u>California Practice Guide: Federal Civil Procedure Before Trial</u> § 15:137 (2001).

In California, court approval is required before a settlement or compromise of the claim of a minor or incompetent is enforceable. Cal. Prob. Code §§ 2504, 3500, 3600-12; Cal. Code Civ. Proc. § 372; <u>see</u> <u>also</u> Robert I. Weil & Ira A. Brown, Jr., <u>California Practice Guide: Civil Procedure Before Trial</u> § 12.572 (2001).

Further, if the minor or incompetent is represented by an appointed representative pursuant to appropriate state law, the settlement shall first be approved by the state court having jurisdiction over the personal representative unless the action is one in which the United States courts have exclusive jurisdiction. Local Rule 17-202 (b)(1). Here, the minor is represented by the minor's natural mother, and not by a formally appointed representative pursuant to appropriate state law. Therefore, it does not appear that approval of the state court is required before the Court may consider this petition.

In California, attorney's fees, reasonable expenses, and court costs to be paid out of settlement proceeds must be approved by the court. Cal. Fam. Code § 6602; Cal. Prob. Code §

3

3601.

When money or property is recovered on behalf of a minor or incompetent person, the money or property will be 1) disbursed to the representative pursuant to state law upon a showing that he is the duly qualified representative under state law, 2) disbursed otherwise pursuant to state law, or 3) disbursed pursuant to such other order as the Court deems proper for the protection of the minor or incompetent person. Local Rule 17-202(e). In California, settlement proceeds not exceeding $5,000.00 may be ordered to be paid to the custodial parent to be held in trust until the minor reaches majority. Cal. Prob. Code §§ 3611(e), 3401. Settlements of less than $20,000.00 may be ordered held on conditions as the court in its discretion determines to be in the best interest of the minor or incompetent person. Cal. Prob. Code § 3611(d). In all other circumstances, the proceeds must be paid to the guardian or conservator or be deposited in a banking institution with withdrawals to be approved by the court. Cal. Prob. Code §§ 3611, 3413.

All applications for orders authorizing interim disbursements shall be heard by the appropriate state court judge or by the assigned Magistrate Judge; if a state court hearing is held regarding interim disbursements, a copy of the order shall be filed with the Court with a copy to the Magistrate Judge and shall be reviewed by the Magistrate Judge in accordance with subsection (b)(1) of Local Rule 17-202. Local Rule 17-202(f).

After the money or other property is paid or delivered to a settling parent, the parent may execute a full release and satisfaction or a covenant not to sue or enforce judgment. Cal.

4

Probate Code § 3500.

In the present case, the legal representative agreed upon settlement, fees, and costs as follows: for the minor Plaintiff Christina Romar, a gross settlement amount of $230,000.00, less medical expenses to be paid from the proceeds of settlement in the amount of $10,871.41, consisting of medical liens remaining after negotiated reductions of $80,107.08, and less reasonable costs of $15,319.37 as itemized in attachment 14 to the petition, and less $76,666.67 (one-third, or thirty-three and one-third per cent) in attorney's fees, for a total net settlement of $127,142.55. This amount will be transferred to the trustee of a special needs trust under Probate Code sections 3602(d), 3604, and 3611(d) for the for the sole benefit of the minor with a disability and the minor's maintenance and care, which is pending finalization and Court approval.

With respect to the amount of attorney's fees, the Court notes that the Receipt of Payment and Release of All Claims attached to the petition specifies that the settlement amount is in consideration of a release of all claims arising out of or connected to the minor's emergency department visits at FCHMC during December 2002 that gave rise to this lawsuit. (Receipt of Payment and Release of All Claims p. 1, Doc. 183-3, p. 16.) The document states that the release was executed as a compromise of a disputed claim or claims. (Id. pp. 2- 3 Doc. 183-3, pp. 17-18.) There is no description of the particular claims released or any reference to any allocation of settlement amount to any specific claims held by Plaintiff.

The operative complaint in this action is the first amended

5

complaint (FAC), Doc. 57 in the docket, filed on March 8, 2006. Two claims are stated: a violation of EMTALA in the form of disparate screening (¶¶ 7-23), and medical malpractice (¶¶ 24-28). It has been determined by this Court that the $250,000 cap of the California Medical Injury Compensation Reform Act, Cal. Civ. Code § 3333.2 (MICRA), on damages for claims based on professional negligence of health care providers, does not apply to Plaintiff's EMTALA disparate screening claim. (Order of October 10, 2008, Doc. 172.) The Court accepted the reasoning that EMTALA was and is not a statute based on professional negligence, and that claims other than MICRA claims may arise out of the same facts as a medical malpractice claim. (Id. pp. 4-5.) Relying on Waters v. Bourhis, 40 Cal.3d 424, 437-38 (1985), the Court stated that to determine whether a MICRA cap applies to a particular EMTALA claim, a Court should examine the legal theory underlying the particular claim and the nature of the conduct challenged to determine whether it would constitute "professional negligence" subject to Cal. Civ. Code § 3333.2. The Court determined that an EMTALA claim concerning disparate screening was not based on the prevailing professional standard of care. Id. at pp. 7-9. The Court concluded that if a plaintiff chooses to proceed on claims that are based on a non-MICRA theories, then the provisions of MICRA are not applicable. (Id. p. 12.)

　　Here, the question is the applicability of Cal. Bus. & Prof. Code § 6146 to the proceeds of settlement of this hybrid action which contains both an EMTALA disparate screening claim and a medical malpractice claim. Section 6146 contains limitations that, if applied to the settlement here, would reduce the

attorney's fees that may be collected to $65,336.83 instead of the initially claimed $76,666.67. Section 6146 provides that an attorney "shall not contract for or collect" the following:

> a contingency fee for representing any person seeking damages in connection with an action for injury or damage against a health care provider based upon such person's alleged professional negligence in excess of the following limits....

That the particular recovery in question must relate specifically to the negligence claim is clear from subsection (c)(1), which defines "recovered" as meaning the "net sum recovered after deducting any disbursements or costs incurred in connection with prosecution or settlement of the claim." (Emphasis added.) "Professional negligence" is defined broadly as a negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death, provided that the services are within the scope of services for which the provider is licensed and which are not within any restriction imposed by the licensing agency or licensed hospital. § 6146(c)(3).

Here, the EMTALA claim is not based on professional negligence and does not constitute an action for personal injury or wrongful death; the primary right protected clearly appears to be a federal right to screening conferred by EMTALA. In an instructive case, Waters v. Bourhis, 40 Cal.3d 424 (1985), the claims settled were a professional negligence action and an intentional tort action against a psychiatrist who allegedly engaged in sexual misconduct with a patient. The settlement did not specify on what theory the settlement or recovery were based.

7

The issue raised on summary judgment was whether or not § 6146 applied to limit the recovery in circumstances where both claims were settled and where the attorney declared that he had advised his client, the patient, of § 6146, and the client had agreed to a one-third contingency fee after having consented to the prosecution of both a medical malpractice claim and intentional interference of mental distress claim. 40 Cal.3d at 428-29. The court noted that § 6146 did not apply to all types of actions against providers, but rather, as with the rest of MICRA, only to actions based on the provider's alleged professional negligence. 40 Cal.3d at 432 n. 6. Nevertheless, because of the nature of the action and of the settlement, it was possible that the recovery rested in part on a theory of professional negligence. 40 Cal.3d at 435. The Court concluded that the legislature had not intended to preclude joinder of MICRA and non-MICRA claims, and further that when a plaintiff pursues and recovers on a non-MICRA claim, it was reasonable to conclude that the attorney-fee limits should not apply, even if the plaintiff simultaneously succeeded on a separate, MICRA claim. 40 Cal.3d at 437. The Court stated:

> It is true, of course, that when-as in this case- a hybrid proceeding is settled without specifying on what theory the recovery is based, it will generally be impossible to determine with certainty what role the defendant's potential non-MICRA liability played in producing the settlement. Nonetheless, at least as a general matter, it appears reasonable to assume that the possibility that the plaintiff might recover a judgment in excess of MICRA's limits will have had at least some effect on the amount of the settlement received. Since the plaintiff in such a case will generally have obtained the benefit of proceeding on a non-MICRA theory in the form of a larger settlement award, it would be inequitable to permit such a plaintiff thereafter to insist that his or her attorney's fee be limited by the MICRA provision. For this reason, we conclude that when a plaintiff knowingly chooses

8

> to proceed on both non-MICRA and MICRA causes of
> action, and obtains a recovery that may be based
> on a non-MICRA theory, the limitations of section
> 6146 should not apply.FN13
>
> FN13 We recognize, of course, that many
> malpractice actions will be pursued both on MICRA and
> non-MICRA theories, in the hopes of circumventing
> MICRA's provisions. With respect to the provisions of
> MICRA which affect the amount of a health care
> provider's-or its insurer's-liability, the filing of a
> hybrid action may not pose a significant problem; if a
> plaintiff's non-MICRA theories are not viable, a
> defendant's settlement offer would presumably not be
> significantly affected and should reflect the
> plaintiff's probable recovery if the case were to go to
> trial. With respect to section 6146, however, the
> situation is admittedly different. Since settlements
> will ordinarily not establish whether the non-MICRA
> theories were without merit and played no significant
> role in the settlement recovery, there is a potential
> danger that the limits of section 6146 could be
> improperly avoided. The risk that section 6146 will be
> undermined in this fashion, however, assumes that
> plaintiffs' attorneys will routinely act against their
> own clients' interests, interposing frivolous or
> extremely weak non-MICRA theories simply to increase
> their own contingency fees at the expense of their
> clients. Although we assume that plaintiffs' attorneys
> will be quite innovative in attempting to devise
> non-MICRA theories when they believe in good faith that
> such innovation will work to their clients' benefit, we
> cannot properly assume that they will adopt such
> tactics when it is simply in their own interest and
> contrary to their clients' interest, for such conduct
> would violate their professional obligations to their
> clients. Furthermore, as indicated hereafter, the
> attorney may recover fees in excess of those permitted
> under section 6146 only if the client knowingly
> consents to the pursuit of a non-MICRA cause of action.

40 Cal.3d at 437-38. The court concluded that there might be a potential conflict of interest between the attorney and the client on this matter, and that an attorney who seeks to collect a larger fee than that authorized by § 6146 must specifically advise the client or potential client of the pros and cons of alternative litigation strategies, including potential attorney fees, and obtain the client's consent to pursue and settle a non-

9

MICRA action as well as a MICRA claim. 40 Cal.3d at 438.

Here, a written contract for attorney's fees dated January 14, 2003, reflects that Kevin G. Little, Plaintiff's counsel, offered to represented Plaintiff and Cora Romar, her mother and legal representative, regarding claims of medical negligence and violation of federal emergency room laws at the hospital. (¶ 1.) It also states:

> Attorney and Clients agree that the fee in this matter shall be contingent on collection from the responsible parties, and shall be one-third of the amount collected. This contingency fee has been negotiated by Attorney and Client and is not imposed by law, including state laws limiting attorney fees for medical malpractice claims only. Mother consents to asserting federal and state claims.

(¶ 2.) The agreement is signed by Plaintiff's legal representative.

At the hearing, voir dire of the legal representative reflects that the petition for compromise of the disputed claim correctly stated the basis of the lawsuit, the expenses, and the amount of the remaining medical lien. Legal representative Cora Romar understood the amount of attorney's fees claimed; the agreement concerning attorney's fees was explained to her before she signed it, and she understood it then. Further, she confirmed that recovery of thirty-three per cent for any hybrid or non-MICRA recovery accurately reflected her intent, and the contract was written in plain, simple English and was not a boilerplate agreement. She specifically confirmed at the hearing that she understood the remaining uncertainty about the precise amount of fees to be approved by the Court and the possibility of a reduction of approximately $10,700 from the fees to be allocated

10

to the proceeds available for a special needs trust for the minor should the Court apply § 6146 to reduce the attorney's fees. Upon further questioning by the Court, the legal representative stated that she was satisfied with the settlement in all respects, felt that she had good legal representation throughout the case, and had no criticisms, questions, or concerns about the settlement.

The Court finds that the Plaintiff was informed of the potential conflict of interest with her counsel and that she gave informed consent to the prosecution and settlement of both state and federal claims (MICRA and non-MICRA) and to the agreement concerning an award of attorney's fees.

Further, the Court independently notes the risks undertaken by counsel in litigating this action, the substantial services rendered to his clients, and the significant service still to be rendered with respect to formation of the special needs trust.

The Court finds the settlement to be reasonable, just, in the best interests of the claimant, and fair to all parties and accordingly RECOMMENDS that the terms of the settlement stated above, including costs and attorney's fees, be approved by the district judge assigned to the action even though the special needs trust that is to be formed solely for the benefit of the minor's needs has not yet been established.

The Court declines to recommend immediate payment of the medical liens and attorney's fees. Immediate approval of the settlement and of the specific amount of attorney's fees will provide the parties with notice of the specific amounts needed in order to finalize the formation of the special needs trust. Thereafter, the parties will proceed without delay with the

11

formation of the special needs trust, and the formation of the trust and payment of allocated settlement proceeds thereto shall be submitted to the Court for approval. All payments of fees and expenses may be ordered at the time that the special needs trust is approved. Thereafter, the case will be dismissed by a separate order to be submitted by the parties.

This report and recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. No later than June 30, 2009, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   June 17, 2009**              /s/ Sandra M. Snyder
                                        UNITED STATES MAGISTRATE JUDGE